**SHIRLEY, Margaret, Individually, and as co-personal representative of the Estate of Loren M. Shirley, deceased, and C. Thomas Wagner, as co-personal representatives of the Estate of Loren M. Shirley, deceased, Plaintiffs–Appellees,**

v.

**RUSSELL, Gerald R., and Elmer Buchta Trucking, Incorporated, Defendants–Appellants.**

No. 94S00–9511–CQ–1271.

Supreme Court of Indiana.

March 28, 1996.

G. Byron Overton, Richard C. Rusk, Rusk & Overton, Washington, for Appellees.

D. Timothy Born, Shawn M. Sullivan, Lacey, Terrell, Annakin, Heldt & Baugh, Evansville, for Appellants.

SULLIVAN, Justice.

In response to a certified question from the United States Court of Appeals for the Seventh Circuit,[1] we hold that the monthly survivor benefits paid to the surviving spouse of the decedent in this case constitute "insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly" within the meaning of Indiana Code § 34–4–36–2(1)(B). As such, evidence of such benefits is not admissible in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss.

## Background

This certified question emanates from a wrongful death action originally brought in the United States District Court for the Southern District of Indiana by the co-personal representatives of Loren Shirley's estate. Following a bench trial, the court found that Shirley had died as a result of injuries sustained in an automobile accident caused by the defendants and awarded plain-

---

1. Pursuant to Ind. Appellate Rule 15(O), the following question was certified to us by the Honorable Michael S. Kanne, the Honorable Kenneth F. Ripple, and the Honorable Daniel A. Manion: Whether a monthly survivor benefit, which is paid to the surviving spouse of a deceased pension recipient in consideration for a reduction of the decedent's pension during his life, is a collateral source payment admissible into evidence under Ind.Code § 34–4–36–2.

tiffs approximately $575,000 in damages. On appeal to the United States Court of Appeals for the Seventh Circuit, defendants argued that the district court erred by excluding certain "collateral source payment" evidence when it calculated the damage award.

At the time of his retirement as an Ohio public school teacher, Shirley elected, from the payout options available to him under the Ohio teacher's retirement plan, a "joint and survivor annuity" in order to provide a continuing monthly benefit to his wife upon his death. Had he selected the single life annuity payout option, his monthly gross benefit would have been $1,661.43. Under the terms of the joint and survivor annuity option, his monthly gross benefit was reduced by $158.17 to $1,503.26 and in return his wife became entitled to receive a monthly gross benefit of $751.63, fifty percent of his monthly gross benefit. The trial court excluded evidence of the survivor annuity when it calculated the damages caused by the accident. Defendants argued on appeal that Indiana law—Indiana Code § 34–4–36–1 to § 34–4–36–3, governing "collateral source evidence" in personal injury and wrongful death actions—requires such evidence to be considered both "(1) to enable the trier of fact in a personal injury or wrongful death action to determine the actual amount of the prevailing party's pecuniary loss; and (2) to provide that a prevailing party not recover more than once from all applicable sources for each item of loss sustained." Ind.Code § 34–4–36–1 (1993).

The Seventh Circuit panel assigned to consider defendants' appeal found the issue appropriate for certification. *Shirley v. Russell*, 69 F.3d 839 (7th Cir.1995). We agreed to accept the question by order dated November 27, 1995, and, following the completion of briefing to our court, held oral argument in Indianapolis on January 9, 1996.

### Discussion

■ This state recognized the common law "collateral source rule" which prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources, *i.e.*, sources other than the defendant, to reduce damage awards.

There can be no abatement of damages on the principle of partial compensation received for the injury when it comes from a collateral source independent of the one primarily responsible for the loss. *Pittsburgh C.C. & St. L.R. Co. v. Home Ins. Co.* [183 Ind. 355, 362, 364, 365, 367, 108 N.E. 525 (1915) ].

*Powers v. Ellis*, 231 Ind. 273, 279, 108 N.E.2d 132, 135 (1952). As the Seventh Circuit panel certifying this question to us points out, "[t]his rule held tortfeasors fully accountable for the consequences of their conduct regardless of any aid or compensation acquired by plaintiffs through first-party insurance, employment agreements, or gratuitous assistance." *Shirley v. Russell*, 69 F.3d at 842 (*citing Herrick v. Sayler*, 160 F.Supp. 25 (N.D.Ind.1958)).

There can be no doubt that evidence of the survivor annuity at issue here would have been prohibited under the common law collateral source rule. In the wrongful death case in which our court first recognized the collateral source rule in Indiana, the defendant sought to reduce the amount of the plaintiff's recovery by the amount of life insurance on the life of the deceased. The court refused to permit the offset, saying "[t]o allow such a defence would defeat actions under law, when the party killed had, by his prudence and foresight, made provision or left means for the support of his wife and children, and the wrong-doer would thus be enabled to protect himself against the consequences of his own wrongful act." *Sherlock v. Alling*, 44 Ind. 184, 200 (1873). That is, among the most central principles upon which the common law rule was built is that collateral source payments resulting from the victim's own "prudence and foresight" should not offset a damage award. As Shirley's widow's survivor annuity was the result of Shirley's "prudence and foresight," evidence of it would have been barred by the common law collateral source rule.

■ But our legislature abrogated the common law collateral source rule when, in 1986, it enacted the statute implicated by this case. As quoted in *Background, supra*, the purpose of the new collateral source rule

statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or wrongful death action. Ind.Code § 34–4–36–1. In fact, the new statute abrogated both the substance and the procedure of the common law collateral source rule. Substantively, instead of tortfeasors being "held ... fully accountable for the consequences of their conduct," *Shirley*, 69 F.3d at 842; now victims may not recover more than once for each item of loss sustained, Ind.Code § 34–4–36–1(2). Procedurally, instead of evidence of collateral source payments being prohibited, *Powers*, 231 Ind. at 279, 108 N.E.2d at 135; now evidence of collateral source payments may not be prohibited except for specified exceptions. Ind.Code §§ 34–4–36–1 and Ind.Code § 34–4–36–2.

The legislature has provided that the following collateral source payments may not be considered by the finder of fact or the court:

(A) payments of life insurance or other death benefits;

(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or

(C) payments made by the state or the United States, or any agency, instrumentality, or subdivision thereof, that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought.

Ind.Code § 34–4–36–2(1).

■ The district court found Shirley's widow's survivor annuity to fall within the meaning of "insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly" within the meaning of Ind.Code § 34–4–36–2(1)(B). We agree.[2] As the district court explained:

These payments amount to insurance benefits paid for directly by Shirley. He elected to receive less each month in pension benefits so that his wife would be

assured of some income after his death. In effect, his insurance premiums were deducted each month from his pension payment. Indiana's wrongful death and collateral source statutes aim to ensure that a plaintiff is awarded the actual amount of pecuniary losses. However, the Indiana Legislature has also demonstrated that insurance benefits are entitled to different consideration than other collateral sources of income. Consequently, the court will not include the [joint and survivor annuity] payments received by Margaret Shirley in determining economic loss.

*Shirley v. Russell*, EV92–163–C, Findings of Fact and Conclusions of Law, concl. law no. 12 (S.D.Ind. Aug. 29, 1994).

While observing that it was "plausible" that the survivor benefit is a pension payment and not insurance, the Seventh Circuit panel also observed that there is a "colorable argument that the survivor benefit is a species of insurance coverage" for which both the decedent and his widow paid on a monthly basis:

Loren Shirley elected to forego almost 10% of his gross monthly pension in consideration for the survivor benefit, and Margaret Shirley also paid for the benefit to the extent that she depended upon the [retired teacher] pension for financial support. The monthly withholding of $158.17 (the premium) was consideration for the [teachers' retirement system's] promise to pay Margaret Shirley $751.63 per month (the coverage), including a 3% annual cost-of-living adjustment, upon Loren Shirley's death (the risk). The [teachers' retirement system's] general information sheet states that "under a joint and survivor annuity with reversion, if your beneficiary's death occurs before yours, you would go back to the single life annuity above." Loren Shirley had a reversionary interest in the survivor benefit. Had Margaret Shirley predeceased him, the risk would no longer exist and his gross pension would

---

**2.** Plaintiffs make a persuasive argument that Shirley's widow's survivor annuity payments are not collateral source payments at all but are evidence of the surviving spouse's pecuniary condition. Because we agree with the trial court that, even if the annuity payments are collateral source payments, they are not admissible under the statute, we find it unnecessary to address this contention.

have reverted to its full amount of $1,671.43 since he would have ceased paying the premium.

*Shirley*, 69 F.3d at 843.

We conclude that Shirley's widow's survivor annuity, though perhaps not insurance for tax or regulatory purposes, has sufficient hallmarks of insurance to be deemed such for purposes of the new collateral source rule statute. Shirley caused his monthly pension benefit to be reduced by the economic and functional equivalent of an insurance premium: the amount of the reduction—the premium—was consideration for the teachers' retirement system's promise to pay a monthly benefit to his widow should he predecease her—the insurance coverage. And had Shirley's widow predeceased him, his obligation to pay the premium would have ceased as the need for coverage would have ended.

### Conclusion

We therefore hold that when Shirley elected to reduce his monthly pension benefit to purchase the joint and survivor annuity, he paid directly for insurance benefits. As such, evidence of the joint and survivor annuity was not admissible in Shirley's estate's wrongful death claim. Ind.Code § 34–4–36–2(1)(B).

SHEPARD, C.J., and DeBRULER, DICKSON and SELBY, JJ., concur.