SULLIVAN, Justice.
The amount of medical expenses actually paid by the plaintiff in this personal injury case was discounted from the amount originally billed because of arrangements between the plaintiff's health insurance company and the medical service providers. The defendant sought to introduce evidence of the discounted amount actually paid over the plaintiffs objection that Indiana's "collateral source" statute bars evidence of insurance benefits To the extent the discounted amounts may be introduced without referencing insurance, they may be used to determine the reasonable value of medical services.
Background
Brandon Stanley and Danny Walker were involved in an automobile accident in 2004. As a result of the accident, Walker sustained injuries and received treatment from eleven different medical providers. Walker filed a complaint against Stanley, *854 arguing that as a result of Stanley's negligence, Walker incurred medical expenses, lost wages, and experienced pain and suffering. Before trial, Stanley admitted negligence; this case proceeded on the issue of damages only.
During the trial, Walker, the plaintiff, introduced redacted medical bills totaling $11,570 showing the amounts medical service providers originally billed him. Stanley, the defendant, made no objection to the introduction of the medical bills into evidence. These bills, to repeat, showed the amounts originally billed but not the amounts totaling $4,750 that were discounted as a result of negotiations between the medical service providers and Walker's health insurance company. Neither Walker nor his insurance company is financially responsible for the amount of the discounts. Walker's medical providers accepted payment from his insurance company of $6,820 ($11,570 minus $4,750) in satisfaction of the medical bills occasioned by Stanley's negligence.
At the close of Walker's testimony, Stanley asked the trial court to admit Walker's discounted medical bills totaling $6,820 into evidence, complete with an offer of proof. Walker objected on grounds that evidence of the discounted bills violated Indiana's collateral source statute, Ind. Code § 34-44-1-2, which in part prohibits the introduction of evidence of "insurance benefits" in personal injury cases. The court sustained Walker's objection. It determined that insurance and "anything flowing from the insurance benefit purchased by the plaintiff ...." [1] would thus be prohibited under the collateral source statute. The court found, in other words, that the discounts constituted "insurance benefits" paid for by the plaintiff.
The jury returned a $70,000 general verdict in favor of Walker. Stanley appealed, asserting that the trial court erred when it barred introduction of Walker's discounted medical bills into evidence. The Court of Appeals affirmed. Stanley v. Walker, 888 N.E.2d 222, 230 (Ind.Ct.App.2008).
Stanley then sought, and we granted, transfer. Stanley v. Walker, 898 N.E.2d 1226 (Ind.2008) (table).
Discussion
I
As set forth above, both the trial court and the Court of Appeals held that it would have violated Indiana's "collateral source" statute for defendant Stanley to present evidence to the jury that plaintiff Walker's medical providers had accepted $4,750 less than the amount they had originally billed in satisfaction of the medical bills occasioned by Stanley's negligence. As such, we begin with a consideration of the "collateral source" statute and its common law predecessor, the "collateral source" rule.
At common law, the collateral source rule prohibited defendants from introducing evidence of compensation received by plaintiffs from collateral sources, that is, sources other than the defendant, to reduce damage awards. This rule held tortfeasors accountable for the full extent of the consequences of their conduct, "regardless of any aid or compensation acquired by plaintiffs through first-party insurance, employment agreements, or gratuitous assistance." Shirley v. Russell, 663 N.E.2d 532, 534 (Ind.1996) (quoting Shirley v. Russell, 69 F.3d 839, 842 (7th Cir.1995)).
The Legislature abrogated the common law collateral source rule by enacting the collateral source statute. Shirley, 663 *855 N.E.2d at 534.[2] Pursuant to our collateral-
source statute, evidence of collateral source payments may not be prohibited exeept for specified exceptions. See id. The statute provides the following:
In a personal injury or wrongful death action, the court shall allow the admission into evidence of:
(1) proof of collateral source payments other than:
(A) payments of life insurance or other death benefits;
(B) insurance benefits for which the plaintiff or members of the plaintiff's family have paid for directly; or
(C) payments made by:
(1) the state or the United States; or
(ii) any agency, instrumentality, or subdivision of the state or the United States;
that have been made before trial to a plaintiff as compensation for the loss or injury for which the action is brought[.]
1.C. § 84-44-1-2.
The purpose of the collateral source statute is to determine the actual amount of the prevailing party's pecuniary loss and to preclude that party from recovering more than once from all applicable sources for each item of loss sustained in a personal injury or wrongful death action. I.C. § 34-44-1-1(1)-(2). At the same time, it retains the common law principle that collateral source payments should not reduce a damage award if they resulted from the victim's own foresight-both insurance purchased by the victim and also government benefits-presumably because the victim has paid for those benefits through taxes.
An injured plaintiff is entitled to recover damages for medical expenses that were both necessary and reasonable. See Cook v. Whitsell-Sherman, 796 N.E.2d 271, 277 (Ind.2003). Thus we are confronted with the question of how to determine the reasonable value of medical services when an injured plaintiff's medical treatment is paid from a collateral source at a discounted rate.
Other jurisdictions have considered this issue with varying results In one approach, courts apply the collateral source rule to negotiated discounts on the plaintiff's medical care for which the plaintiff paid consideration. See Arthur v. Catour, 216 Ill.2d 72, 295 Ill.Dec. 641, 833 N.E.2d 847, 853-54 (2005) (holding that plaintiffs may present evidence of the billed amount of their medical services and defendants may challenge the reasonableness of the billed amount without specifying what evidence the defendant could introduce to challenge the billed amount); Mitchell v. Haldar, 883 A.2d 32, 40 (Del.2005) (holding that the plaintiff can present evidence of the billed amount as representing the reasonable value of the medical services without addressing whether the defendant was barred from introducing evidence of the discount).
Two states courts have held that the medical discounts were a collateral source, but that they were compelled to set off the collateral source amount against an award of compensatory damages under their respective state statutes. See Goble v. Frohman, 901 So.2d 830, 832-33 (Fla.2005); Slack v. Kelleher, 140 Idaho 916, 104 P.3d 958, 967 (2004).
In another approach, the Ohio Supreme Court has allowed both the amount paid and the amount billed into evidence to *856 prove the reasonable value of medical services. See Robinson v. Bates, 112 Ohio St.3d 17, 857 N.E.2d 1195, 1200 (2006) (holding that the jury may determine that the reasonable value of medical services is the amount originally billed, the amount accepted as payment, or some amount in between).
II
Indiana Evidence Rule 418 provides one method of proving the reasonable value of medical expenses. It reads as follows: "[sItatements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury are admissible into evidence. Such statements shall constitute prima facie evidence that the charges are reasonable." Evid. R. 413. By its terms, Rule 413 allows actual past medical charges to serve as prima facie evidence that the charges are reasonable.
The purpose of Rule 413 is to provide a simpler method of proving amount of medical expenses when there is no substantial issue that they are reasonable and were caused by the tort. If there is a dispute, of course the party opposing them may offer evidence to the contrary, including expert opinion. By permitting medical bills to serve as prima facie proof that the expenses are reasonable, the rule eliminates the need for testimony on that often uncontested issue. Finally, the fact that a statement was submitted is at least some evidence that the charge is normal for the treatment involved, and it was necessary to be performed.
Cook, 796 N.E.2d at 277-78. Thus, medical bills can be introduced to prove the amount of medical expenses when there is no substantial issue that the medical expenses are reasonable.
However, in cases where the reasonable value of medical services is disputed, the method outlined in Rule 413 is not the end of the story. See Cook, 796 N.E.2d at 277. The opposing party may produce contradictory evidence to challenge the reasonableness of the proffered medical bills, including expert testimony. See id. Additionally, reasonableness of medical expenses can be proven, in part, by demonstrating that the plaintiff paid the actual amounts incurred. Smith v. Syd's, Inc., 598 N.E.2d 1065, 1066 (Ind.1992). This is premised on the notion that a plaintiff would not pay an unreasonable bill. Id. The paid bill certainly may constitute evidence of the reasonable value of services, but it is not dispositive. See id.
The law of Indiana will allow a plaintiff to recover neither the actual amount of medical bills charged to him nor the amount of medical bills paid by him, but rather, the reasonable and fair value of medical expenses necessarily incurred by him. The actual amount charged to the plaintiff or the amount actually paid by him may tend to prove the reasonable and fair value of the services rendered to him but are not conclusive on the issue.
Chemco Transp., Inc. v. Conn, 506 N.E.2d 1111, 1115 (Ind.Ct.App.1987) (quoting Herrick v. Sayler, 160 F.Supp. 25, 29 (N.D.Ind.1958)), rev'd on other grounds, 527 N.E.2d 179 (Ind.1988).
In sum, the proper measure of medical expenses in Indiana is the reasonable value of such expenses. This measure of damages cannot be read as permitting only full recovery of medical expenses billed to a plaintiff. Id. Nor can the proper measure of medical expenses be read as permitting only the recovery of the amount actually paid. Id. The focus is on the reasonable value, not the actual *857 charge. This is especially true given the current state of health care pricing.
The complexities of health care pricing structures make it difficult to determine whether the amount paid, the amount billed, or an amount in between represents the reasonable value of medical services. One authority reports that hospitals historically billed insured and uninsured patients similarly. Mark A. Hall & Carl E. Schneider, Patients As Consumers: Courts, Contracts, and the New Medical Marketplace, 106 Mich. L.Rev. 648, 663 (2008). With the advent of managed care, some insurers began demanding deep discounts, and hospitals shifted costs to less influential patients. Id. This authority reports that insurers generally pay about forty cents per dollar of billed charges and that hospitals accept such amounts in full satisfaction of the billed charges. Id.
As more medical providers are paid under fixed payment arrangements, another authority reports, hospital charge strue-tures have become less correlated to hospital operations and actual payments. The Lewin Group, A Study of Hospital Charge Setting Practices i (2005). Currently, the relationship between charges and costs is "tenuous at best." Id. at 7. In fact, hospital executives reportedly admit that most charges have "no relation to anything, and certainly not to cost." Hall, Patients As Consumers at 665[3] Thus, based on the realities of health care finance, we are unconvinced that the reasonable value of medical services is necessarily represented by either the amount actually paid or the amount stated in the original medical bill.
When dealing with a similar issue, our sister court in Ohio declared that, "(tlhe jury may decide that the reasonable value of medical care is the amount originally billed, the amount the medical provider accepted as payment, or some amount in between .... both the original bill and the amount accepted are evidence relevant to the reasonable value of medical expenses." Robinson, 857 N.E.2d at 1200-01.[4] We adopt this approach.
At issue in Robinson was the application of Ohio's common law "collateral source rule" in a personal injury action. Id. at 1196. Ohio courts had recognized the collateral source rule since 1970. Id. at 1199. The rule prohibited a jury from being told about a plaintiff's receipt of payment for the plaintiff's injury from a source other than the defendant. Id. The court held that the collateral source rule was not applicable to the discounts to the medical bills because they were not payments made by a third party to the plaintiff. Id. at 1200-01. The court did not identify either the amount billed or the discounted amount paid as the appropriate evidence to be submitted to a jury as the reasonable value of medical expenses. Instead, the eourt determined that both values were relevant evidence that should be submitted to a jury to determine the reasonable value of medical services. Id. at 1200. The court recognized that, "[blecause no one pays the negotiated reduction, admitting evidence of [discounts] does not violate the purpose behind the collateral-source rule. The tortfeasor does not obtain a eredit *858 because of payments made by a third party on behalf of the plaintiff." Id.
The reasonable value of medical services is the measure used to determine damages to an injured party in a personal injury matter. This value is not excelusively based on the actual amount paid or the amount originally billed, though these figures certainly may constitute evidence as to the reasonable value of medical services. A defendant is liable for the reasonable value of the services. We find this to be the fairest approach; to do otherwise would create separate categories of plaintiffs based on the method used to finance medical expenses. See Robinson, 857 N.E.2d at 1200 (discussing how its rule avoided the creation of separate categories of plaintiffs based on individual insurance coverage).
Given the current state of the health care pricing system where, to repeat, authorities suggest that a medical provider's billed charges do not equate to cost, the jury may well need the amount of the payments, amounts billed by medical service providers, and other relevant and admissible evidence to be able to determine the amount of reasonable medical expenses. To assist the jury in this regard, a defendant may cross-examine any witness called by the plaintiff to establish reasonableness. The defendant may also introduce its own witnesses to testify that the billed amounts do not represent the reasonable value of services. Additionally, the defendant may introduce the discounted amounts into evidence to rebut the reasonableness of charges introduced by the plaintiff. We recognize that the discount of a particular provider generally arises out of a contractual relationship with health insurers or government agencies and reflects a number of factors-not just the reasonable value of the medical services. However, we believe that this evidence is of value in the fact-finding process leading to the determination of the reasonable value of medical services.
The collateral source statute does not bar evidence of discounted amounts in order to determine the reasonable value of medical services. To the extent the adjustments or accepted charges for medical services may be introduced into evidence without referencing insurance, they are allowed.
III
In accordance with Rule 418, Walker introduced his original medical bills as pri-ma facie evidence of the reasonable value of medical services. He presented billing statements showing gross charges of $11,570[5] Stanley attempted to introduce evidence representing that "other amounts of money actually represent the reasonable amount [for the medical expenses]...." (App.69.) Stanley argues that he was entitled to demonstrate that the amounts paid and accepted by Walker's medical providers contradicted Walker's prima facie evidence of reasonable medical expenses. As discussed above, when there is a dispute as to the prima facie evidence of the reasonable cost of medical expenses, the opponent may introduce contradictory evidence.
Stanley conceded that he "(could not] ask Mr. Walker the amount of the expenses that were paid by [Anthem], that's the collateral source." (App.66.) Instead, Stanley contends that he wanted to enter into evidence the amount that two parties have agreed to as "reasonable" as *859 evidenced by the discounts. Stanley wanted to submit evidence to the jury that would show that the amount accepted in satisfaction of the medical charges totaled $6,820, that is, $4,750 less than the $11,570 originally billed. Because Stanley sought to do so without referencing insurance, his evidence should have been admitted. The jury was instructed that:
The proper measure of damages for medical services is the reasonable and fair value of medical expenses necessarily incurred by a Plaintiff. As such, the proper measure of damages for medical services is not the actual amount of medical bills charged to a Plaintiff nor the amount of medical bills paid by a Plaintiff.
Statements of charges for medical, hospital or other health care expenses for diagnosis or treatment occasioned by an injury constitute prima [facie] evidence that the charges are reasonable and fair.
App. 132.
The first two sentences of this instruction were perfectly proper. But the third sentence was not. As just noted, the trial court should have allowed Stanley's evidence of the discounted amount actually paid. To the extent that the trial court included in the instruction reference to the amount initially billed as evidence of reasonable and fair value, it should also have referred to the discounted amount actually paid (after having earlier allowed that amount to have been admitted into evidence).
Conclusion
Because the amount at issue constitutes such a small percentage of the overall damages award, we affirm the judgment and remand this case to the trial court with orders to reduce the damage award by $4,750. If Walker will not accept this remittitur, he is free to retry the issue of damages before another jury.
BOEHM, J., concurs with a separate opinion in which SHEPARD, C.J., joins.
DICKSON, J., dissents with a separate opinion in which RUCKER, J., concurs.

. App. 71.

. The collateral source statute referenced in Shirley, T.C. § 34-4-36-1 (repealed by Pub.L. No. 1-1988, § 221), is now codified at I.C. § 34-44-1-2.

. Indeed, amicus in this case, the Insurance Institute of Indiana, Inc., flatly says "charges billed by health care providers are effectively irrelevant to the value of the services provided. ..." (Amicus Br. at 8.)

. During the time at issue in Robinson, Ohio's collateral source rule excluded evidence of benefits paid by a collateral source. 857 N.E.2d at 1199-1200. Thus, the Ohio Supreme Court's decision was rendered under a collateral source rule different from our collateral source statute. However, we find nothing in fis ruling inconsistent with the operation of our collateral source statute.

. This Court has previously decided that "statements" are equivalent to "bills" or "charges." Cook, 796 N.E.2d at 277. By one definition, a "statement" shows the balance due. Id. "[Rule 413's] reference to 'statements of charges' is in this sense." Id.